IN THE SUPREME COURT OF NORTH CAROLINA

No. 142PA17

Filed 7 December 2018

STATE OF NORTH CAROLINA

v.

TERANCE GERMAINE MALACHI

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 799 S.E.2d 645 (2017), finding prejudicial error in a judgment entered on 28 January 2016 by Judge Yvonne Mims Evans in Superior Court, Mecklenburg County, vacating defendant's convictions, and granting defendant a new trial. Heard in the Supreme Court on 29 August 2018.

*Joshua H. Stein, Attorney General, by John R. Green, Jr., Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Aaron Thomas Johnson, Assistant Appellate Defender, for defendant-appellee.*

ERVIN, Justice.

The issue before the Court in this case is whether the Court of Appeals erred by vacating the judgment entered by the trial court based upon defendant's convictions for possession of a firearm by a felon and having attained habitual felon status on the grounds that the trial court had erroneously instructed the jury that it could convict defendant based upon a constructive possession theory that lacked sufficient evidentiary support. After careful consideration of the record in light of the applicable law, we reverse the decision of the Court of Appeals and remand this case

to that court for consideration of defendant's remaining challenges to the trial court's judgment.

Shortly after midnight on 14 August 2014, the Charlotte-Mecklenburg Police Department received an anonymous call from a person who stated that he had just seen an African-American male wearing a red shirt and black pants insert a handgun into his pants while in the parking lot of Walker's Express, a convenience store that was located at 3416 Freedom Drive. Upon arriving at Walker's Express approximately three minutes later, Officers Ethan Clark and Jason Van Aken of the Charlotte-Mecklenburg Police Department saw approximately six to eight people standing in the parking lot, including a man later identified as defendant, who was the only person present who matched the description provided by the caller.

As Officer Clark pulled his patrol vehicle into the parking lot, defendant looked directly at the officer, "squared to [Officer Clark], and then immediately looked away towards the ground, blading his body."[1] Upon making this observation, Officer Clark and Officer Van Aken grabbed defendant's arms and walked him out of the group with which he had been standing. During that process, defendant "kept moving and tugging" and "was very squirmy." As the officers frisked and handcuffed defendant, Officer Van Aken removed a revolver from the waistband on the right side of

---

[1] According to Officer Clark, the occurrence of "blading" suggests that the person in question is attempting to conceal the fact that he or she has a weapon on his or her person by adopting a stance that is perpendicular to the person or persons making the observation.

defendant's pants.  Officer Kevin Hawkins arrived as Officer Van Aken was in the

process of taking the firearm into his custody.  After Officer Van Aken seized the

firearm, defendant pointed to another individual in the parking lot and stated that

this individual had given him the firearm "and told him to hold on to it."

On 16 November 2015, the Mecklenburg County Grand Jury returned bills of

indictment charging defendant with possession of a firearm by a felon and carrying a

concealed weapon.  Previously, on 2 February 2015, defendant was indicted for

having attained habitual felon status.  The charges against defendant came on for

trial before the trial court and a jury at the 19 January 2016 criminal session of the

Superior Court, Mecklenburg County.  During the trial, defendant stipulated that he

had been convicted of a felony prior to 14 August 2014.  At the jury instruction

conference, the State requested the trial court to instruct the jury in accordance with

N.C. Pattern Jury Instruction Crim. No. "104.41, actual possession."  Defendant

objected to the State's request on the grounds that,

> when it gives the definition of possession it refers to actual
> or constructive.  The [S]tate's evidence was that it was
> actual possession; there was no constructive possession. . . .
> It's not in terms of if it was near him or on him; there are
> witnesses stating it was on him, so therefore I would
> contend you should deny that instruction.

In overruling defendant's objection, the trial court told the prosecutor that "I think

[the State] may have a good argument for actual, but nothing for constructive.  And

if the jury believes the witnesses, they're going to believe actual possession, right?"

As a result, the trial court instructed the jury that:

> Possession of an article may be either actual or constructive. A person has actual possession of an article if he has it on his person and is aware of its presence, or has both the power and intent to control its disposition or use. A person has constructive possession of an article if the person does not have it on his person but is aware of its presence and both the power and intent to control its disposition or use. A person's awareness of an article and a person's power and intent to control its disposition or use may be shown by direct evidence, or it may be inferred by the circumstances.
>
> . . . .
>
> The [d]efendant has been charged with possessing a firearm after having been convicted of a felony. For you to find the [d]efendant guilty of this offense, the State must prove two things beyond a reasonable doubt.
>
> First, that prior to August 14th, 2014, the [d]efendant was convicted of a felony that was committed in violation of the law of the State of North Carolina; and second, that thereafter the [d]efendant possessed a firearm. If you find from the evidence beyond a reasonable doubt that the [d]efendant was convicted of a felony i[n] Superior Court and that the [d]efendant thereafter possessed a firearm, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

As it deliberated, the jury requested "a legal definition of possession of a firearm [and] a definition of a concealed weapon." Before responding to the jury's inquiry, the trial court addressed the parties, stating that "I will re-read the definition

of possession of firearm by a felon, and in that definition I'll include actual and constructive possession; and I will re-read the concealed weapon instruction." Defendant unsuccessfully renewed his objection to the trial court's proposed possession instruction "based on due process grounds, on the possession instruction."

On 21 January 2016, the jury returned a verdict convicting defendant of possession of a firearm by a felon and acquitting him of carrying a concealed weapon. Seven days later, defendant entered a plea of guilty to attaining habitual felon status. Based upon the jury's verdict and defendant's guilty plea, the trial court entered a judgment sentencing defendant to a term of 100 to 132 months imprisonment. Defendant noted an appeal to the Court of Appeals from the trial court's judgment.

In seeking relief from the trial court's judgment before the Court of Appeals, defendant argued, among other things, that the trial court had erred by instructing the jury that it could find him guilty of possession of a firearm by a felon on the basis of a constructive possession theory. *State v. Malachi*, ___ N.C. App. ___, ___, 799 S.E.2d 645, 647 (2017).[2] In awarding defendant a new trial on the basis of this contention, the Court of Appeals began by determining that "the State's evidence

---

[2] Defendant also argued that the trial court had erred by denying his motion to suppress the firearm seized from his person. As a result of its decision to grant defendant a new trial on the basis of the trial court's decision to allow the jury to convict defendant on the basis of the doctrine of constructive possession, the Court of Appeals did not reach defendant's search-related claim.

supported an instruction only for actual possession and that the trial court erroneously instructed the jury on constructive possession."[3] *Id.* at ___, 799 S.E.2d at 649. After noting that "a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial," *id.* at ___, 799 S.E.2d at 648 (quoting *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973), *cert. denied*, 418 U.S. 905, 94 S. Ct. 3195, 41 L. Ed. 2d 1153 (1974)), and that "[o]ur courts [ ] have consistently held that a trial court's inclusion of a jury instruction unsupported by the evidence presented at trial is an error requiring a new trial," *id.* at ___, 799 S.E.2d at 648, first citing *State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990); and then citing in the following order *State v. Pakulski*, 319 N.C. App. 562, 574, 356 S.E.2d 319, 326 (1987); *State v. Johnson*, 183 N.C. App. 576, 584-85, 646 S.E.2d 123, 128 (2007); *State v. Hughes*, 114 N.C. App. 742, 746, 443 S.E.2d 76, 79, *disc. rev. denied*, 337 N.C. 697, 448 S.E.2d 546 (1994); and *State v. O'Rourke*, 114 N.C. App. 435, 442, 442 S.E.2d 137, 140 (1994)), the Court of Appeals acknowledged that, in *State v. Boyd*, 366 N.C. 548, 742 S.E.2d 798 (2013), this Court had reversed a Court of Appeals decision on the basis of a dissenting opinion stating that "errors [arising from trial

---

[3] Although the State argued "that the evidence was sufficient to support constructive possession because during the time after officers removed the revolver from [d]efendant, he theoretically could have broken free from the officers and taken hold of the revolver," *id.* at ___, 799 S.E.2d at 649, the Court of Appeals determined that, even though "[d]efendant certainly was aware of the presence of the revolver taken from him by police, no evidence was presented that he had the power to control its disposition or use by the officers who had secured it," *id.* at ___, 799 S.E.2d at 650. The State has not attempted to bring this argument forward for our consideration.

court instructions allowing the jury to potentially convict a criminal defendant on the basis of a legal theory lacking sufficient evidentiary support that were] not objected to at trial are not plain error *per se*," with "the burden [being instead] on the defendant to show that [such] an erroneous . . . jury instruction had a probable impact on the jury's verdict," *id.* at ___, 799 S.E.2d at 649 (citing *Boyd*, 222 N.C. App. 160, 173, 730 S.E.2d 193, 201) (2012) (Stroud, J., dissenting)). The Court of Appeals interpreted our decision in *Boyd* to be limited to "plain error review" rather than eliminating "the long established presumption that the jury relied on an erroneous disjunctive instruction not supported by the evidence when given over an objection by the defendant's trial counsel." *Id.* at ___, 799 S.E.2d at 649. As a result, since *Boyd* "does not address erroneous disjunctive jury instructions given over the objection of a defendant's trial counsel" and since the jury's verdict in this case did not specify the theory upon which that body based its decision to convict defendant, the Court of Appeals determined that defendant was entitled to a new trial based upon the trial court's erroneous decision to allow the jury to convict defendant on the basis of constructive possession. *Id.* at ___, 799 S.E.2d at 649. In addition, the Court of Appeals determined that defendant should receive a new trial "[e]ven if *Boyd* were interpreted to eliminate the presumption of prejudice by jury instructions unsupported by the evidence and objected to at trial" given that "there is a reasonable possibility that the jury would have reached a different result had the trial court not

provided instruction about the theory of constructive possession." *Id.* at ___, 799 S.E.2d at 650.

On 23 May 2017, the State filed a petition seeking discretionary review of the Court of Appeals' decision in this case. In seeking further review by this Court, the State asserted that the trial court did not err by instructing the jury concerning the doctrine of constructive possession because " 'actual possession' is simply a subset of the broader concept" of constructive possession. In addition, the State argued that the Court of Appeals had misapplied *Boyd* and failed to conduct an appropriate prejudice analysis. According to the State, *Boyd* established that, regardless of whether a contemporaneous objection had been lodged at trial, "where an instruction is given on alternative theories of an offense despite one of the theories being unsupported, the erroneous instruction is to be analyzed for prejudice." The State contends that, although "plain error" analysis was appropriate in *Boyd* given the defendant's failure to object to the challenged instruction at trial, "[i]n this case, where there was an objection, the prejudice analysis would properly take the form of regular prejudicial error review." As a result, the State requested this Court to grant further review of the Court of Appeals' decision and to determine that there was no reasonable possibility that the jury convicted defendant on constructive possession grounds in light of the state of the evidence.

Defendant sought to dissuade the Court from granting discretionary review to consider "three separate legal questions, each of which has been settled for decades."

As an initial matter, defendant argued that this Court had long distinguished between actual and constructive possession. Secondly, defendant argued that "it is erroneous to instruct the jury on a theory unsupported by evidence." Thirdly, defendant urged this Court to reject the State's assertion that errors resulting from jury instructions allowing the jury to consider defendant's guilt on the basis of a legal theory that lacks sufficient evidentiary support should be subjected to a prejudice analysis in lieu of "the *per se* error rule followed by this Court for at least three decades." Finally, defendant asserted that the Court of Appeals had, in fact, conducted a prejudice analysis and determined that there was "a reasonable possibility that the jury would have reached a different result had the trial court not provided instruction about the theory of constructive possession." (Quoting *Malachi*, ___ N.C. App. at ___, 799 S.E.2d at 647). As a result, defendant urged this Court to refrain from granting further review in this case. We allowed the State's discretionary review petition on 1 November 2017.

In seeking to persuade us to overturn the Court of Appeals' decision, the State begins by asserting that the Court of Appeals erred by finding that the trial court had erroneously instructed the jury concerning the doctrine of constructive possession. According to the State, actual and constructive possession, instead of being mutually exclusive, "are definitions that partake of each other," with "what we think of as 'actual possession' [being] simply a subset of the broader concept [of constructive possession.]" The State asserts that, "[o]riginally, possession meant physical

-9-

custody," with "constructive possession" constituting a "legal fiction" "employed to cover those scenarios where possession 'in the real sense of the word' was not present." (Quoting 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.1(a)(2) (2d ed. 2003).) Over time, however, the State contends that this Court has "used constructive possession to broaden the scope of possessory crimes in general." (First citing *State v. Myers*, 190 N.C. 239, 243, 129 S.E. 600, 601 (1925); then citing *State v. Baxter*, 285 N.C. 735, 738, 208 S.E.2d 696, 698 (1974).) "At some point, possession itself adopted the more general definition—the power and intent to control," (citing *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 713 (1972)), so that "actual possession" "became one form or subset of possession," (citing *State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986)), with constructive possession becoming "possession's paradigm."

According to the State, the approach adopted by the Court of Appeals' decision in this case conflicts with its recognition in *State v. Barkley*, 233 N.C. App. 787, 759 S.E.2d 713, 2014 WL 1792716 (2014) (unpublished), that, "[r]ather than presenting an alternative theory of the offense, as defendant claims, the instructions as given simply provided the jury with an accurate legal definition of possession, which includes both actual and constructive possession." (Citing *Barkley*, 2014 WL 1792716, at *4.) Similarly, the State contends that this Court has "recognized the overlap" between the two concepts by acknowledging that "actual and constructive possession 'often so shade into one another that it is difficult to say where one ends

and the other begins.' " (Quoting *State v. McNeil*, 359 N.C. 800, 808, 617 S.E.2d 271, 276 (2005).) As a result, the State concludes, "given this Court's recognition that the boundary between actual and constructive possession is indefinite and that evidence of the one can constitute evidence of the other, the instructions given in this case were not erroneous at all."

Secondly, the State argues that, even if actual and constructive possession constitute "distinct theories" rather than "definitional components," the Court of Appeals misapplied *Boyd* by concluding that any error that the trial court might have committed was prejudicial. (Citing *Boyd*, 366 N.C. at 210, 739 S.E.2d at 838.) According to the State, this Court's decision in *Boyd* established that an error arising from the delivery of an instruction concerning a theory of guilt devoid of sufficient evidentiary support does not require an award of appellate relief unless the error in question was prejudicial regardless of whether a contemporaneous objection was lodged against the challenged instruction at trial. After acknowledging that *Boyd* arose in a plain error, rather than a preserved error, context, the State asserts that the only difference between these two situations stemmed from the nature of the required prejudice analysis, with the relevant inquiry, in a case in which a contemporaneous objection had been lodged at trial, being "whether, but for the instruction on the unsupported theory, there was a reasonable possibility of a different verdict." (Citing N.C.G.S. § 15A-1443(a) (2015).)

According to the State, this Court had held, prior to *Pakulski*, that the erroneous submission of an alternative theory of guilt that was not supported by evidence was not *always* prejudicial. (Citing *State v. Moore*, 315 N.C. 738, 749, 340 S.E.2d 401, 408 (1986) (stating that "[i]t is generally prejudicial error for the trial judge to permit a jury to convict upon a theory not supported by the evidence").) Although our decision in *Pakulski* relied upon *State v. Belton*, 318 N.C. 141, 165, 347 S.E.2d 755, 770 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 677, 483 S.E.2d 483, 414 (1997), *cert. denied*, 522 U.S. 900, 118 S. Ct. 248, 139 L. Ed. 2d 177 (1997), the State asserts that the holding in *Pakulski* "that submission of an alternative theory to the jury unsupported by evidence resulted in *per se* prejudice even if overwhelming evidence supported the other theory submitted to the jury" differed "significantly" "from *Belton*'s holding that submission of an alternative theory to the jury supported by evidence but legally invalid resulted in *per se* prejudice."

In addition, the State contends that the United States Supreme Court has clarified that the decisions upon which this Court relied in *Belton* "do not apply to instructions on an alternative theory of guilt unsupported by evidence" and only apply "to instructions on an alternative theory of guilt supported by evidence but otherwise legally unavailable." In spite of its acknowledgment that the United States Supreme Court's decision in *Griffin v. United States* does not control the resolution of the state law issue before us in this case, the State cites *Griffin* for the proposition

that "a defendant is not entitled to a new trial when a jury returns a general verdict of guilty that could have been premised on a theory for which insufficient evidence was presented so long as another theory of guilt was supported by sufficient evidence." (Citing *Griffin v. United States*, 502 U.S. 46, 59, 112 S. Ct. 466, 474, 116 L. Ed. 2d 371, 383-84 (1991).) As a result, the State urges us to hold, in reliance upon the logic of *Griffin*, that when a trial court instructs on an alternative theory of guilt that lacks sufficient evidentiary support, defendant is not entitled to an award of appellate relief in the absence of a showing of prejudice.

Finally, the State argues that the Court of Appeals erred by holding, in the alternative, that the trial court's decision to allow the jury to convict defendant of possession of a firearm by a felon on the basis of a constructive possession theory that lacked sufficient evidentiary support prejudiced defendant. According to the State, the record contains "overwhelming and uncontroverted evidence that defendant was a felon and that he possessed a firearm—it was removed from his person and he acknowledged to police that he had been holding it," making it exceedingly doubtful that the jury relied upon a theory of constructive possession, rather than actual possession, in deciding to convict defendant.

Defendant, on the other hand, asserts that this Court should affirm the Court of Appeals' decision. In defendant's view, the State's contention that this Court has "erased" the distinction between actual and constructive possession is meritless. As an initial matter, defendant notes that the State had failed to assert that "this Court,

over time, has effectively dissolved this distinction" between actual and constructive possession before either the trial court or the Court of Appeals. (Citing N.C. R. App. P. 10(a), (c); *id* at R. 28(a).) Instead, defendant states that the State argued before both the trial court and the Court of Appeals that "both theories of possession were supported by sufficient evidence to submit them to the jury," requested the trial court to instruct the jury concerning both of these possible theories of guilt, and drew a distinction between actual and constructive possession throughout its brief before the Court of Appeals. In addition, defendant argues that, to the extent that the "trial court erred by failing to instruct the jury in accordance with the [S]tate's new understanding of possession, that error was invited by the [S]tate," given that the State requested, "*over repeated objection*, that the trial court instruct the jury on both actual and constructive possession." (First citing *Bell v. Harrison*, 179 N.C. 190, 198, 102 S.E. 200, 204 (1920); then citing *Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994); and then citing *State v. McPhail*, 329 N.C. 636, 643, 406 S.E.2d 591, 596 (1991)). As a result, for all of these reasons, defendant contends that the State has waived the right to argue before this Court that actual and constructive possession do not represent different theories of guilt.

Secondly, defendant argues that the State's attempt to describe actual possession as a subset of constructive possession "runs counter to a century of precedent from this Court," ranging from our decision last year in *State v. Jones*, 369 N.C. 631, 634, 800 S.E.2d 54, 57 (2017) (holding that "this Court has stated that '[a]

person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing' ") (quoting *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)), to our 1913 decision in *State v. Lee*, 164 N.C. 533, 535-36, 80 S.E. 405, 405-06 (1913) (interpreting a statute prohibiting the possession of intoxicating liquors for sale as encompassing both "actual and constructive possession"). As a result, defendant contends that the State's argument that the trial court did not err by instructing the jury concerning the doctrine of constructive possession ignores "[a] century of precedent [which] confirms that actual and constructive possession are mutually exclusive because constructive possession, *by definition*, can only occur where actual possession does not."

In addition, defendant contends that, even if the State's defense of the trial court's constructive possession instruction is correct, the trial court's decision to deliver a constructive possession instruction to the jury was still erroneous. According to defendant, it is "well established that 'a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial.' " (Quoting *Cameron*, 284 N.C. at 171, 200 S.E.2d at 191.) Defendant argues that the evidence, when taken in the light most favorable to the State, merely suggested that defendant had actual possession of the firearm that was discovered on his person. As a result, defendant claims that the trial court erred by instructing the jury that it could convict defendant on the basis of a constructive possession theory.

-15-

Similarly, defendant contends that the Court of Appeals correctly held that the trial court's decision to deliver the erroneous constructive possession instruction was "presumptively reversible." According to defendant, a series of decisions by this Court clearly demonstrates "the command of *stare decisis*" that a trial court's decision to instruct the jury on a theory of guilt unsupported by the evidence requires appellate relief unless the reviewing court can conclusively determine from the record that the jury did not rely upon the unsupported decision in deciding to convict the defendant. (First citing *State v. Petersilie*, 334 N.C. 169, 193, 432 S.E.2d 832, 846 (1993); then citing, in the following order, *Lynch*, 327 N.C. at 219, 393 S.E.2d at 816; *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326; *Moore*, 315 N.C. at 749, 340 S.E.2d at 408; *State v. Dammons*, 293 N.C. 263, 272, 237 S.E.2d 834, 840 (1977); *State v. Lee*, 287 N.C. 536, 541, 215 S.E.2d 146, 149 (1975); *State v. Duncan*, 264 N.C. 123, 127, 141 S.E.2d 23, 26-27 (1965); *State v. Knight*, 248 N.C. 384, 389-90, 103 S.E.2d 452, 455-56 (1958).). In defendant's view, neither this Court's decision in *Boyd*, nor *Pakulski*'s citation to *Belton* justify a departure from the rule "that it is reversible error for the trial court to instruct the jury on a theory unsupported by the evidence." Defendant asserts that *Pakulski* was "neither the genesis nor the last statement of the [per se reversible error] rule, but one of a decades-long series of cases from this Court applying it." For that reason, defendant argues that any attempt to distinguish between the "legally-unsupported" jury instruction in *Belton* and the "factually-

unsupported" jury instruction in *Pakulski* represents a misreading of this Court's precedent.

In a similar vein, defendant rejects the State's assertion that our recent decision in *Boyd* applies to more than "unpreserved instructional and evidentiary error" subject to a plain error standard of review. (Citing *Boyd*, 366 N.C. at 210, 739 S.E.2d at 838.) In view of the fact that defendant repeatedly objected to the delivery of a constructive possession instruction at trial, defendant asserts that his challenge to the trial court's constructive possession instruction is simply not subject to plain error review, rendering *Boyd* irrelevant to the proper resolution of this case. As a result, defendant argues that the delivery of an erroneous instruction concerning a theory of guilt that lacks sufficient evidentiary support is not subject to prejudicial error analysis and necessarily requires an award of appellate relief.

Defendant contends the "traditional rule," which he describes as presuming prejudice in instances in which a trial court instructs the jury concerning a theory of guilt lacking sufficient evidentiary support, "accords with the purposes and incentives governing preservation" by "urg[ing] both parties to speak up at trial where errors can be corrected." In the aftermath of *Boyd*, defendant claims that "[t]he presumption that the jury convicted based on the unsupported legal theory" only applies when the defendant objected to the delivery of the unsupported instruction and "there is a general verdict, rather than a special verdict specifying the theory underlying the conviction." As a result, defendant argues that the "traditional rule"

properly gives the State the incentive to request that the trial court instruct the jury to render a special, rather than a general, verdict, thereby assuring that the jury reached its decision on the basis of a correct understanding of the applicable law.

Finally, even if this Court decides that the erroneous delivery of an instruction allowing the jury to convict a defendant on the basis of a theory that lacks sufficient record support is subject to prejudicial error analysis, defendant argues that the Court of Appeals correctly determined that "there is a reasonable possibility that there would have been a different outcome had the trial court instructed the jury correctly." According to defendant, the Court of Appeals correctly held that the trial court's decision to deliver a constructive possession instruction created a risk that the jury would be confused about the meaning of "possession," with the existence of such confusion being evidenced by the jury's request for a further instruction concerning possession during the deliberation process. In addition, defendant suggests that the jury could have had doubts about the credibility of the State's evidence given its decision to acquit defendant of carrying a concealed weapon and the existence of evidence tending to show that Officer Van Aken had an altercation with defendant that resulted in defendant's hospitalization and the termination of Officer Van Aken's employment, that Officers Clark and Hawkins did not prepare their written statements on the day of the incident underlying the charges that were lodged against defendant or mention the altercation between Officer Van Aken and defendant in their statements, that Officer Hawkins remained in contact with Officer Van Aken

after the latter's employment was terminated, and that no audio or video recordings of the discovery of the firearm on defendant's person had been made. As a result, defendant urges us to uphold the Court of Appeals' decision to award him a new trial.

"It is well established that possession may be actual or constructive." *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 348 (2012) (citing *State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986)). "Actual possession requires that a party have physical or personal custody of the item." *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998) (citation omitted). "[A] person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing." *Jones*, 369 N.C. at 634, 800 S.E.2d at 57 (quoting *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)). According to well-established North Carolina law, "it is error for the trial judge to charge on matters which materially affect the issues when they are not supported by the evidence." *State v. Jennings*, 276 N.C. 157, 161, 171 S.E.2d 447, 449 (1970) (First citing *State v. Knight*, 248 N.C. 384, 389-90, 103 S.E.2d 452 455-56 (1958); then citing *State v. McCoy*, 236 N.C. 121, 124, 71 S.E.2d 921, 923 (1952)).

Assuming, without in any way deciding, that the State has neither waived the right to assert that actual possession is a subset of constructive possession nor invited any error that the trial court might have made by treating actual and constructive possession as separate concepts in its jury instructions, this Court has, as defendant notes, long recognized a distinction between actual and constructive possession.

Simply put, the prior decisions of this Court treat constructive possession as an alternative means of showing the possession of an item necessary for guilt of certain offenses that becomes available in the event that the State is unable to establish that the defendant actually possessed an item. Although a person in actual possession of an object might well have "the intent and capability to maintain control and dominion over" that object, the essence of the two types of possession revolves around the extent to which the person in question either did or did not physically have the object in his or her possession, with there being no need for a showing of "the intent and capability to maintain control and dominion over that object" in the event that the defendant physically possessed the relevant item. As a result, we hold that the Court of Appeals correctly determined that the trial court erred by allowing the jury to potentially convict defendant of possession of a firearm by a felon on the basis of a constructive possession theory.

In awarding defendant a new trial, the Court of Appeals held, first, that the trial court's error was not subject to prejudicial error review and, then, that, even if prejudicial error review were appropriate, the trial court's erroneous constructive possession instruction prejudiced defendant. In urging us to uphold the validity of the first of these two decisions, defendant argues that an erroneous instruction concerning a legal theory that lacks sufficient evidentiary support is "presumptively

erroneous"[4] and requires automatic reversal, with this assertion resting upon

defendant's interpretation of a series of decisions by this Court. In other words,

defendant argues that the extent to which a prejudice inquiry should be conducted in

cases involving errors such as the one at issue here has already been resolved, so that

the Court of Appeals' decision must be upheld on stare decisis grounds.

Admittedly, the decisions upon which defendant relies in attempting to

establish that this Court has adopted an automatic reversal rule consistently grant

appellate relief in the event that a trial judge allows the jury to convict a defendant

on the basis of a legal theory that lacks sufficient evidentiary support without

---

[4] In his brief, defendant appears to use the terms "presumptively erroneous" and "per se erroneous" as if they were synonymous. As this Court has previously noted, "[p]resumption is a term which is often loosely used." *Henderson Couty v. Osteen*, 297 N.C. 113, 117, 254 S.E.2d 160, 163 (1979). As a general proposition, evidentiary presumptions are either "permissive," "conclusive," or "mandatory," with a permissive presumption involving a situation in which, once "the basic fact underlying the presumption has been established," "the presumed fact may or may not be found," *Dobson v. Harris*, 352 N.C. 77, 82 n.3, 530 S.E.2d 829, 835 n.3 (2000); a mandatory presumption, which may or may not be rebuttable, involving a situation in which, "[once] the basic fact has been established, the presumed . . . fact *must* be found unless sufficient evidence of its nonexistence is forthcoming," *id.* at 82 n.3, 530 S.E.2d at 835 n.3 (alterations in original) (quoting Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 44, at 148 (5th ed. 1998)); and a conclusive presumption being another term for an irrebutable mandatory presumption, *State v. Reynolds*, 307 N.C. 184, 189, 297 S.E.2d 532, 535 (1982) (stating that "[a] conclusive presumption provides that upon proof of the basic fact, the presumed fact must be found and cannot be overcome by rebutting evidence" (quoting John M. Schmolesky, *County Court of Ulster County v. Allen and Sandstrom v. Montana: The Supreme Court Lends an Ear but Turns Its Face*, 33 Rutgers L. Rev. 261, 265 (1981))). As we understand defendant's argument, the presumption arising from the delivery of an instruction authorizing the jury to convict the defendant on the basis of a legal theory lacking sufficient evidentiary support to which the defendant made a contemporaneous objection is a conclusive one—if such an event occurs, a new trial must be awarded without any further inquiry.

explicitly engaging in any sort of prejudice inquiry. On the other hand, none of the decisions upon which defendant relies explicitly holds that a prejudice inquiry would be inappropriate in such instances,[5] and a number of them contain language that suggest that such a prejudice analysis should be conducted. *Moore*, 315 N.C. at 749, 340 S.E.2d at 408 (stating that "[i]t is generally prejudicial error for the trial judge to permit a jury to convict upon a theory not supported by the evidence"); *Dammons*, 293 N.C. at 272, 237 S.E.2d at 840 (stating that "[i]t is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the evidence"); *Lee*, 287 N.C. at 541, 215 S.E.2d at 149 (stating that "where the trial court in a criminal case permits the jury to return a verdict of guilty upon a legal theory or a state of facts not supported by the evidence it is prejudicial error entitling

---

[5] This Court did discuss the harmless error issue in *Pakulsk*i, in which the State sought a finding of non-prejudice on the grounds that "the jury could have based its verdict solely on the robbery felony." *Pakulski*, 319 N.C. at 574, 356 S.E.2d at 326. After noting that "the verdict form does not reflect the theory upon which the jury based its finding of guilty of felony murder" and that "we cannot discern from the record upon which theory the jury relied," this Court declined to "assume that the jury based its verdict on the theory for which it received a proper instruction." *Id.* at 574, 356 S.E.2d at 326. However, given that the State's evidence tying defendant to the homicide for which he was convicted consisted of little, if anything, more than accomplice testimony and given that the defendant presented both alibi evidence and other testimony challenging the accomplice's credibility, *id.* at 566-67, 356 S.E.2d at 322-23, the evidence of defendant's guilt was clearly subject to serious dispute. Similarly, in *Lynch*, the record contained evidence which a juror might have mistakenly believed to support the lying in wait theory that the Court ultimately determined to lack adequate evidentiary support, while the State's evidence of defendant's guilt on the basis of malice, premeditation, and deliberation was essentially circumstantial in nature. *Lynch*, 327 N.C. at 214-15, 393 S.E.2d at 813-14. As a result, neither of these decisions explicitly rejects the use of harmless error analysis in similar circumstance, while the outcomes in both cases are consistent with what seems to us to be an appropriately conducted harmless error analysis.

the defendant to a new trial"); *Knight*, 248 N.C. at 389-90, 103 S.E.2d at 455-56 (stating that the trial court's instructions, which "permitted the jury to rest its verdict on a theory not supported by the evidence," "was calculated to prejudice, and may have prejudiced, the defendant").[6] As a result, given that our existing jurisprudence does not conclusively establish that existing North Carolina law encompasses an automatic reversal rule of the type contended for by defendant, we must determine whether we should adopt such a rule.[7]

As this Court has said on numerous occasions, litigants are not entitled to receive "perfect" trials; instead, they are entitled to receive "a fair trial, free of prejudicial error." *State v. Ligon*, 332 N.C. 224, 243, 420 S.E.2d 136, 147 (1992). "In order to obtain a new trial it is incumbent on a defendant to not only show error but also to show that the error was so prejudicial that without the error it is likely that a different result would have been reached." *State v. Loren*, 302 N.C. 607, 613, 276 S.E.2d 365, 369 (1981); *see also State v. Alston*, 307 N.C. 321, 339, 298 S.E.2d 631,

---

[6] Similar language, which could be construed as dicta, appears in *State v. Dick*, 370 N.C. 305, 308, 807 S.E.2d 545, 547 (2017), which cites *Lynch*, 327 N.C. at 219, 393 S.E.2d at 816, for the proposition that "insufficient evidence regarding one theory submitted to the jury, when prejudicial, was reversible error requiring [a] new trial."

[7] The State has argued, in reliance upon *Griffin* and *Belton*, that an automatic reversal rule arising from an instruction allowing the jury to convict a criminal defendant on an invalid legal theory would only be appropriate in the event that the legal theory in question was unavailable to the State as a matter of law rather than because that theory lacked sufficient evidentiary support. We do not find this argument persuasive given this Court's repeated decisions to grant appellate relief in cases in which the trial court allowed the jury to convict the defendant based upon a legal theory that lacked sufficient record support.

644 (1983) (stating that "[t]he defendant is not entitled to a new trial based on trial errors unless such errors were material and prejudicial"); *State v. Galloway*, 304 N.C. 485, 496, 284 S.E.2d 509, 516 (1981) (stating that "[i]t has long been the rule in this jurisdiction that not every erroneous ruling on the admissibility of evidence will result in a new trial being ordered," with the burden being "on the appellant not only to show error but also to show that there is a reasonable possibility 'that, had the error in question not been committed, a different result would have been reached at the trial.' ") (quoting N.C.G.S. § 15A–1443 (1978)).  "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence" and "promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Rose v. Clark*, 478 U.S. 570, 577, 106 S. Ct. 3101, 3105, 92 L. Ed. 2d 460, 470 (1986) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674, 684-85 (1986) (first citing, *United States v. Nobles*, 422 U.S. 225, 230, 95 S. Ct. 2160, 2166, 45 L. Ed. 2d 141, 148 (1975); then citing R. Traynor, *The Riddle of Harmless Error* 50 (1970))).[8]  As a result, a showing of prejudice is generally required before appellate relief is granted in this jurisdiction.

---

[8] Although we agree with defendant that our recent decision in *Boyd*, which was made in a plain error context, does not control the outcome of this case given that defendant properly preserved his challenge to the trial court's erroneous constructive possession instruction for purposes of appellate review, it does tend to call into question any contention

An automatic reversal rule has, however, been deemed appropriate in some circumstances. As the United States Supreme Court has stated in discussing the concept of structural error, " 'while there are some errors to which [harmless-error analysis] does not apply, they are the exception and not the rule,' " with "harmless-error analysis [being applicable] to instructional errors so long as the error at issue does not categorically ' "vitiat[e] *all* the jury's findings" ' " and with "[a]n instructional error arising in the context of multiple theories of guilt no more vitiat[ing] *all* the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted." *Hedgepeth v. Pulido*, 555 U.S. 57, 61, 129 S. Ct. 530, 532, 172 L. Ed. 2d 388, 391-92 (2008) (per curiam) (first alteration in original) (first quoting *Clark*, 478 U.S. at 578, 106 S. Ct. at 3106, 92 L. Ed. 2d at 471; and then quoting *Neder v. United States*, 527 U.S. 1, 11, 119 S. Ct. 1827, 1834, 144 L. Ed. 2d 35, 48 (1999) (third alternation in original) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S. Ct. 2078, 2082, 124 L. Ed. 2d 182, 190-91 (1993)).[9] Similarly, this

that harmless error concepts are completely irrelevant to errors such as the one at issue in this case and to suggest that our usual approach to harmless error analysis, under which unpreserved errors are reviewed under a plain error standard of review while errors that were the subject of a contemporaneous objection at trial are reviewed for harmlessness under the standards enunciated in either N.C.G.S. § 15A-1443(a) or N.C.G.S. § 15A-1443(b), applies in cases like this one.

[9] We do not, of course, wish to be understood as treating the United States Supreme Court's structural error jurisprudence as controlling with respect to the issue of when, under North Carolina's law, harmless error analysis is and is not appropriate. Instead, as is discussed more fully in the text of this opinion, "North Carolina courts also apply a form of structural error known as error per se," under which "error per se is automatically deemed prejudicial and thus reversible without a showing of prejudice." *State v. Lawrence*, 365 N.C.

Court has treated some errors as being sufficiently serious as to merit an award of appellate relief without the necessity for a showing of prejudice. *State v. Hucks*, 323 N.C. 574, 581, 374 S.E.2d 240, 245 (1988) (holding that a failure to appoint two counsel to represent a defendant in a capital trial constitutes prejudicial error per se); *State v. Mitchell*, 321 N.C. 650, 659, 365 S.E.2d 554, 559 (1988) (holding that a trial court's "refusal to permit both [of the defendant's trial] counsel to address the jury during the defendant's final arguments constitute[d] prejudicial error per se in both the guilt-innocence and sentencing phases" of the defendant's capital trial); *State v. Bindyke*, 288 N.C. 608, 627, 220 S.E.2d 521, 533 (1975) (holding that the presence of an alternate juror in the jury room during deliberations constitutes prejudicial error per se). However, this Court has generally refrained from finding prejudicial error per se even in the face of serious evidentiary and instructional errors. For example, this Court has deemed errors such as the admission of "other bad acts evidence" in violation of N.C.G.S. § 8C-1, Rule 404(b), *see State v. McKoy*, 317 N.C. 519, 529, 347 S.E.2d 374, 380 (1986) (holding that the admission of evidence tending to show other criminal conduct on the part of one of the defendants involved in a

---

506, 514, 723 S.E.2d 326, 331-32 (2012) (first citing N.C.G.S. § 15A–1443(a) (2009); then citing *State v. Parker*, 350 N.C. 411, 421, 426, 516 S.E.2d 106, 114, 117 (1999), *cert. denied*, 528 U.S. 1084, 120 S. Ct. 808, 145 L. Ed. 2d 681 (2000); and then citing *State v. Brown*, 325 N.C. 427, 428, 383 S.E.2d 910, 910 (1989) (per curiam)). As a result of the fact that "federal structural error and state error per se have developed independently," *Lawrence*, 365 N.C. at 514, 723 S.E.2d at 332, the same error might or might not be deemed structural by the federal courts and error per se by the North Carolina courts.

multi-defendant trial in violation of N.C.G.S. § 8C-1, Rule 404(b) constituted harmless error with respect to both that defendant and a codefendant), a violation of a defendant's constitutional right to be informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), *see State v. Hicks*, 333 N.C. 467, 481, 428 S.E.2d 167, 175 (1993) (holding that, in light of "the extremely incriminating evidence properly admitted at trial," "the admission of the defendant's first confession in violation of the *Miranda* exclusionary rule was harmless beyond a reasonable doubt"), *abrogated on other grounds by State v. Buchanan*, 353 N.C. 332, 340, 543 S.E.2d 823, 828 (2001)), a violation of the defendant's right to confront the witnesses for the prosecution, *see State v. Ortiz-Zape*, 367 N.C. 1, 13-14, 743 S.E.2d 156, 164-65 (2013) (holding, in the alternative, that any violation of the defendant's confrontation rights resulting from the admission of expert witness opinion testimony that analyzed data from lab tests performed by another chemist was harmless beyond a reasonable doubt), *cert. denied*, 572 U.S. 1134, 134 S. Ct. 2660, 189 L. Ed. 2d 208 (2014)), and the omission of an element of the crime charged from the trial court's substantive instructions to the jury, *see State v. Bunch*, 363 N.C. 841, 845, 689 S.E.2d 866, 869 (2010) (holding "that the trial court's omission of elements of a crime in its recitation of jury instructions is reviewed under the harmless error test"), to be subject to harmless error analysis.  The instructional error under consideration in this case more closely resembles the types of errors in which a showing of prejudice is required before an award of appellate relief is deemed appropriate than the

fundamental, difficult to evaluate, errors that this Court has deemed to constitute prejudicial error per se, and defendant has failed to demonstrate why the instructional error at issue in this case should be treated differently than similar instructional errors. As a result, like the United States Supreme Court, we are not persuaded that the error at issue in this case is so potentially serious as to justify adopting an automatic reversal rule, which essentially treats errors like the one at issue in this case as prejudicial error per se.

The only argument advanced in defendant's brief in support of the adoption of an automatic reversal rule other than the assertion that this Court's prior decisions require such a decision is a contention that such an automatic reversal rule, as modified in *Boyd*, "recognizes the nature of the error and the simple steps that can be taken to address any resulting harm." In essence, defendant argues that, under the automatic reversal rule as modified by *Boyd*, "[t]he presumption that the jury convicted on the unsupported legal theory [ ] applies only where there is a general verdict rather than a special verdict specifying the theory underlying the conviction." In defendant's view, "[i]f, despite an objection, the [S]tate insists on an unsupported theory," it "can request a special verdict specifying the theory on which the jury convicted," with this "minimal step" "cost[ing] the [S]tate virtually nothing." According to defendant, it is only fair to place the burden of requesting the use of a special verdict upon the State, since it "is the party requesting the unsupported jury instruction" "over objection" and should "bear the responsibility of curing the

problems the unsupported instruction would cause" and since placing the burden on defendant to request a special instruction may result in a decision that defendant "has abandoned her original objection" or "joined in requesting the instruction." As a result, defendant contends that "[a] rule presuming prejudice where the defendant has objected to the unsupported instruction [ ] puts the incentives in all of the right places," with defendant being given an incentive to object in order to either preclude the delivery of the unsupported instruction or permit "[t]he resulting error [to] be corrected on appellate review" and with the State being given "an incentive to request a special verdict form to cure the problem it created."

We are not persuaded by defendant's incentive-based argument. As an initial matter, defendant's argument rests upon the apparent assumption that the only way in which the delivery of an instruction allowing defendant's conviction on the basis of an unsupported legal theory could ever be deemed harmless is in the event that the reviewing court is provided with an ironclad guarantee that the jury did not rely upon the unsupported legal theory in deciding to convict defendant. Needless to say, insistence upon such a guarantee would not be consistent with this Court's usual approach to the resolution of harmless error-related issues, which the relevant statutory language indicates must rest upon an assessment of the likelihood that the outcome at trial would have been different had an error not occurred. In addition, defendant's argument overlooks the fact that errors like the one at issue here do not necessarily occur at the behest of the State. On the contrary, the trial court may elect

to deliver an instruction like the one at issue here on its own motion or even over the State's objection. Moreover, the trial court might reject a request by the State for the submission of a special verdict form to the jury. Even so, defendant's approach suggests that an automatic reversal would be appropriate in each of those instances. Finally, defendant fails to take into account the fact that, as long as a defendant lodges a contemporaneous objection to the delivery of an instruction like the one at issue here, the defendant's claim will be reviewed utilizing the more easily satisfied "reasonable possibility" standard set out in N.C.G.S. § 15A-1443(a) instead of the more stringent "reasonable probability" standard enunciated for use in "plain error" situations in *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (stating that, in order to establish plain error, "a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty' " (first quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983); then citing *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986))). On the other hand, in the event that the State failed to seek to obtain the submission of a special verdict form or failed to persuade the trial court to submit one, it would have passed up a chance to potentially eliminate any need for the reviewing court to undertake a "reasonable possibility" analysis. Defendant's implicit argument to the contrary notwithstanding, the approach to the harmless error issue that we deem to be appropriate in this case does, in fact, provide the State with an incentive to ask that the jury be required to return a special verdict. As a result, for

all of these reasons, we hold that defendant's challenge to the delivery of the trial court's unsupported constructive possession instruction is subject to traditional harmless error analysis.

As a general proposition, a defendant seeking to obtain appellate relief on the basis of an error to which he or she lodged an appropriate contemporaneous objection at trial must establish that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2017).[10] However, the history of this Court's decisions in cases involving the submission of similar erroneous instructions and our consistent insistence that jury verdicts concerning a defendant's guilt or innocence have an adequate evidentiary foundation persuade us that instructional errors like the one at issue in this case are exceedingly serious and merit close scrutiny to ensure that there is no "reasonable possibility" that the jury convicted the defendant on the basis of such an unsupported legal theory. However, in the event that the State presents exceedingly strong evidence of defendant's guilt

---

[10] Defendant suggests that the Court should treat the trial court's decision to allow the jury to convict defendant on the basis of a constructive possession theory as a constitutional violation subject to harmless review pursuant to N.C.G.S. § 15A-1443(b) (requiring the State to show that the alleged error was harmless beyond a reasonable doubt). In view of the fact that the Court of Appeals did not find that the trial court's error was constitutional in nature and the fact that defendant did not petition this Court to allow consideration of such a constitutional issue, we decline to adopt defendant's alternative argument concerning the manner in which the required harmless error analysis should be conducted.

on the basis of a theory that has sufficient support and the State's evidence is neither in dispute nor subject to serious credibility-related questions, it is unlikely that a reasonable jury would elect to convict the defendant on the basis of an unsupported legal theory.[11]

According to the undisputed evidence elicited at trial, investigating officers went to a convenience store parking lot after receiving a report that an individual possessed a firearm and discovered such a weapon while searching an individual who matched the description of the person in question and who turned out to be defendant. In the event that the jury found this undisputed evidence to be credible beyond a reasonable doubt, it would have been required, under the trial court's instruction, to convict defendant of possession of a firearm by a felon on the basis of an actual possession theory. As a result, the ultimate issue before this Court is whether there is a reasonable possibility that the jury would have sufficiently questioned the credibility of the investigating officers' testimony to return a verdict of acquittal.

---

[11] According to defendant, the State waived the right to argue that the trial court's error was harmless on the grounds that the State had failed to advance such an argument in its discretionary review petition. Admittedly, the question to be presented stated in the State's petition refers to the Court of Appeals' "fail[ure] to conduct a prejudice analysis." However, the State's petition contained an argument heading asserting that the Court of Appeals had "fail[ed] to conduct a prejudice analysis in accord with" *Boyd* and *Griffin* and an argument that there was no "reasonable possibility" that the jury would have convicted defendant on the basis of a constructive possession theory "since the evidence was uncontroverted that defendant possessed the firearm" given that "it was removed from his person and he acknowledged to police that he was holding it." As a result, we conclude that the issue of whether the delivery of the constructive possession instruction constituted prejudicial error is properly before us.

Defendant claims that the jury could have questioned the credibility of the investigating officers' testimony for a number of reasons, including the injuries that Officer Van Aken inflicted upon defendant during a post-arrest altercation, the fact that Officer Van Aken's employment was terminated and that he was charged with assaulting defendant based upon this post-arrest altercation, the fact that the statements provided by various officers were not written immediately after defendant's arrest, and the fact that the officers' interactions with defendant were not recorded and that the other officers remained in contact with Officer Van Aken after his termination. Almost all of the reasons that defendant has advanced in support of his contention that the testimony of the investigating officers is subject to serious question rest upon events that occurred after defendant was placed under arrest for possessing a firearm. For that reason, defendant's implicit suggestion that investigating officers attempted to "frame" defendant in order to protect Officer Van Aken seems to us to rest upon a logical inconsistency. Moreover, while defendant's arguments predicated upon the officers' failure to record their interaction with defendant and the delay in the drafting of their reports cannot be dismissed upon the basis of similar logic, they do not strike us as particularly compelling. Finally, the Court of Appeals' emphasis upon the fact that the jury asked for further instructions concerning the possession issue and the fact that the jury acquitted defendant of carrying a concealed weapon does not tend to show prejudice, at least in our opinion, given the absence of any explanation for why the jury might have sought clarification

about the meaning of possession and the fact that guilt of carrying a concealed weapon, unlike the charge of possession of a firearm by a felon, requires proof of intentional concealment. *State v. Gilbert*, 87 N.C. 527, 528 (1882) (stating that "*[t]o conceal a weapon*[ ] means something more than the mere act of having it where it may not be seen" and "implies an assent of the mind, and a *purpose* to so carry it, that it may not be seen"). As a result, defendant has not satisfied us that there is a reasonable possibility that, in the absence of the erroneous constructive possession instruction, the jury would have acquitted defendant.

Thus, for all of these reasons, we hold that the Court of Appeals erred by holding that challenges to jury instructions allowing juries to convict criminal defendants on the basis of legal theories that lack evidentiary support are not subject to harmless error analysis and by holding that, even if such a harmlessness analysis were appropriate, there was a reasonable possibility that the outcome at defendant's trial would have been different had the trial court refrained from allowing the jury to convict defendant on the basis of a constructive possession theory. As a result, the Court of Appeals' decision in this case is reversed and this case is remanded to the Court of Appeals for consideration of defendant's remaining challenges to the trial court's judgment.

REVERSED AND REMANDED.

Justice MORGAN dissenting.

While I agree with my learned colleagues in the majority that the Court of Appeals correctly determined that the trial court erred by allowing the jury to potentially convict defendant of the offense of possession of a firearm by a felon on the basis of a constructive possession theory, I nonetheless disagree with their conclusion that the lower appellate court erred in its determination that there was a reasonable possibility that the outcome of defendant's trial would have been different if the trial court had refrained from allowing the jury to potentially convict defendant on the basis of a theory of constructive possession. Based on my position, I am inclined to affirm the Court of Appeals' decision to vacate the trial court's judgment and grant defendant a new trial.

My departure from the majority in this case stems from the liberties that I believe the majority improperly takes to discount the reasonable possibility that, had the error of the submission of the constructive possession of firearm by defendant not been submitted to the jury as a theory for his guilt, a different result would have been reached at the trial out of which this appeal arises. The majority expressly utilizes "close scrutiny to ensure that there is no 'reasonable possibility' that the jury convicted the defendant on the basis of such an unsupported legal theory"—namely, constructive possession—while introducing a new evaluative standard that "in the event that the State presents exceedingly strong evidence of defendant's guilt on the

basis of a theory that has sufficient support and the State's evidence is neither in dispute nor subject to *serious* credibility-related questions"—here, actual possession—"it is unlikely that a reasonable jury would elect to convict the defendant on the basis of an unsupported legal theory." (Emphasis added.) As I assess this newly minted doctrine by the majority cobbled together from selected principles enunciated in our decisions of *Bradshaw, Jones, Ligon, Loren, Alston,* and *Galloway,* coupled with the majority's willingness to couch the trial jury's ability to "potentially convict defendant of the offense of possession of a firearm by a felon on the basis of a constructive possession theory" as insufficient wrongful exposure to warrant a new trial for defendant, my recognition of the fundamental concepts of trial evidence, the application of the appropriate law to the evidence, and the respective roles of the judicial forum and the jury leads me in a different direction from my fellow jurists in this case.

"Every criminal conviction involves facts (i.e., what actually occurred) and the application of the law to the facts . . . . In a jury trial the judge instructs jurors on the law, and the jury finds the facts and applies the law." *State v. Arrington,* ___ N.C. ___, ___, 819 S.E.2d 329, 331 (2018). Courts must not "invade the province of the jury, which is to assess the credibility of the witnesses and determine the facts from the evidence adduced." *State v. Rhodes,* 290 N.C. 16, 24, 224 S.E.2d 631, 636 (1976) (first citing *State v. Canipe,* 240 N.C. 60, 81 S.E.2d 173 (1954); and then citing 7 Strong's North Carolina Index 2d *Trial* § 18 (1968)); *see also State v. Ward,* 364 N.C.

133, 153, 694 S.E.2d 738, 750 (2010) (Newby, J., dissenting) (observing that "it is the role of the jury to make any final determination regarding the weight to be afforded to the evidence" (quoting *Crocker v. Roethling*, 363 N.C. 140, 150, 675 S.E.2d 625, 632 (2009) (Martin, J., concurring)). By opining upon the reasonableness of the jury's two potential theories underlying a verdict of guilty, when there is no evidence to support one theory and sufficient evidence to support the other theory, the majority is engaging in an exercise that invades the established province of the jury. I do not consider it to be within a judicial forum's proper purview to sift through the evidence and to speculate as to which theory, between or among multiple ones, a jury considered to be persuasive to reach its verdict, yet the majority has effectively done so here.

In a similar vein, the majority states that "the ultimate issue before this Court is whether there is a reasonable possibility that the jury would have sufficiently questioned the credibility of the investigating officers' testimony to return a verdict of acquittal." "[A]ssess[ing] the credibility of the witnesses" is a matter for the jury. *Rhodes*, 290 N.C. at 24, 224 S.E.2d at 636. While the majority acknowledges that "defendant suggests that the jury could have had doubts about the credibility of the State's evidence" regarding the investigating law enforcement officers, nonetheless, the members of the majority assess the manner in which the trial jury could have determined issues of credibility with respect to the submitted theories of defendant's culpability and conclude that it "seems to us to rest upon a logical inconsistency."

Just as this Court in the case at bar should refrain from conducting a review of the potential effect of erroneous jury instructions upon a jury's verdict of guilty by invading the province of the jury as to which submitted legal theory may have prompted its finding of guilty, this Court should also take care to refrain from conducting such a review by invading the province of the jury by conducting its own examination of witness credibility issues.

For the reasons stated, I would affirm the decision of the Court of Appeals in this case.