IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-794

Filed: 7 July 2020

Guilford County, Nos. 17 CRS 89028, 89030, 89230, 89561; 18 CRS 24126-27

STATE OF NORTH CAROLINA

v.

JAMAAH ROBERT MCMILLAN

Appeal by Defendant from Judgments entered 13 February 2019 by Judge Susan E. Bray in Guilford County Superior Court. Heard in the Court of Appeals 4 March 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Derek L. Hunter, for the State.*

*Meghan Adelle Jones for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Jamaah Robert McMillan (Defendant) appeals from Judgments entered 13 February 2019 upon his convictions of Discharging a Weapon into Occupied Property, Possession of Firearm by Felon, First-Degree Burglary, Trafficking in Cocaine by Possession of 28 Grams or More But Less than 200 Grams (Trafficking in Cocaine by Possession), Possession with Intent to Sell And Deliver (PWISD) Cocaine, and

attaining Habitual-Felon status.[1] The Record before us, including evidence presented at trial, tends to show the following:

On the night of 28 October 2017, Defendant arrived at Daniel Hamilton's (Hamilton) apartment in Greensboro, North Carolina, to collect approximately $300.00 Hamilton owed Defendant. Hamilton previously sold drugs for Defendant and knew him only by the name of "Molly G." Defendant and Hamilton began arguing and the two men got into a physical altercation. Defendant left Hamilton's apartment "to get a gun." Hamilton closed the front door after Defendant left and walked back into his bedroom where his girlfriend Marichol Watkins (Watkins) was laying on the bed. As Hamilton reached the bedroom, he heard two gunshots into the apartment, one of which shattered the glass on the front door. Hamilton told Watkins to call the police, and he grabbed his phone and ran through the bathroom to hide in the closet of the apartment's second bedroom.

Hamilton called 911 and reported the gunshots. While Hamilton was on the phone with dispatch, he heard Defendant enter the apartment. Defendant entered the bedroom holding his gun and asked Watkins where Hamilton had gone. Watkins gestured toward the bathroom, but Defendant did not pursue Hamilton. Instead, Defendant told Watkins "if I kill him, I'm going to have to kill you because I can't leave a witness just like that." Defendant then again left the apartment.

---

[1] Defendant does not appeal from his convictions for Discharging a Weapon into Occupied Property, Possession of Firearm by Felon, or from attaining Habitual-Felon status.

Officer K.M. Nutter (Officer Nutter) with the Greensboro Police Department responded to Hamilton's apartment shortly after around 12:30 a.m. on 29 October 2017. Hamilton told Officer Nutter he suspected Defendant fired the gunshots and described his argument with Defendant from earlier that night. Hamilton admitted to Officer Nutter he used to sell drugs for Defendant. Hamilton stated that Defendant operated out of 1915 Freeman Mill Road, where Hamilton had purchased cocaine several times. Hamilton also gave descriptions of Defendant's two vehicles—a silver BMW two-door coupe and a gray Ford van.

Detective Adam Snyder (Detective Snyder) was assigned to Defendant's case and met with Hamilton and Watkins on 30 October 2017. Detective Snyder showed Hamilton and Watkins a photograph of Defendant, and they both identified Defendant by the name of "Molly G." At their meeting, Hamilton also gave Detective Snyder Defendant's phone number. Detective Snyder provided Defendant's phone number to Sergeant M.R. McPhatter (Sergeant McPhatter) of the Greensboro Police Department's Criminal Investigations Division, and Sergeant McPhatter received a "PIN track and trace order" for the number. The results of the track and trace order indicated, through GPS coordinates and call logs, that the phone number had been used from 1915 Freeman Mill Road.

On 1 November 2017, Sergeant McPhatter arrived at 1915 Freeman Mill Road with warrants for Defendant's arrest on charges of Discharging a Firearm into an

Occupied Dwelling, Possession of Firearm by Felon, and First-Degree Burglary. Sergeant McPhatter observed a silver BMW and a gray Ford van parked in the backyard. Sergeant McPhatter contacted Defendant through the door of the residence and informed him of the active warrants for his arrest. After about thirty minutes, Defendant opened the door and surrendered. Sergeant McPhatter searched Defendant incident to his arrest and found a BMW key in his pocket and around $1,800.00 cash.

After Defendant's arrest, Detective Snyder went to 1915 Freeman Mill Road to search the residence with additional members of the violent criminal apprehension team. In the attic above a bedroom closet, detectives found a bag of what was suspected to be cocaine and a lockbox, which contained a handgun and a plastic bag with a "pink powdery . . . rock-like substance." Plastic bags, a digital scale, and a box of ammunition were found in the kitchen in addition to several glass containers, which detectives suspected contained residue of controlled substances. Inside the Ford van, detectives found two additional gun magazines—a silver colored handgun magazine in the back pocket of the passenger seat and a small Glock magazine from the passenger door pocket. Live rounds of ammunition were found in a closet of the residence as well as on the floorboard of the silver BMW and in the driveway. The rounds were later determined to match the bullet casings recovered from inside Hamilton's apartment.

On 22 January 2018, Defendant was indicted on charges of Discharging a Weapon into Occupied Property, Possession of Firearm by Felon, First-Degree Burglary, and attaining Habitual-Felon status. Defendant was also indicted of Trafficking in Cocaine by Possession, PWISD Cocaine, and attaining Habitual-Felon status. Defendant's case came on for trial on 6 February 2019. Hamilton and Watkins both testified on behalf of the State and recounted the night of 28 October 2017. Forensic scientist David Perron of the North Carolina State Crime Lab testified the substances recovered from 1915 Freeman Mill Road were tested and determined to be 33.57 grams of cocaine. Defendant presented no evidence.

The trial court held a charge conference with counsel and went page by page through the proposed jury instructions. Defense counsel requested the trial court instruct the jury on Misdemeanor Breaking and Entering as a lesser included offense to the charge of First-Degree Burglary in accordance with the North Carolina Pattern Jury Instructions, and the trial court agreed. Defendant objected to the trial court's proposed instruction on both actual and constructive possession in relation to the charges of Trafficking in Cocaine by Possession and PWISD Cocaine; however, the trial court ruled it would instruct the jury on both theories of possession.

On the lesser included offense of Misdemeanor Breaking and Entering, the trial court instructed the jury:

> Breaking or entering differs from burglary, in that both a breaking and an entry are not necessary, either a breaking or an

entry is enough; further, the building that was involved need not have been a dwelling house; the breaking or entry need not have been during the nighttime; and there need not have been the intent to commit a felony therein.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date of October 29th, 2017, the defendant broke into or entered a building without the consent of the owner or tenant, it would be your duty to return a verdict of guilty of breaking or entering.

For the charges of Trafficking in Cocaine by Possession and PWISD Cocaine, the trial court continued:

A person possesses cocaine if the person is aware of its presence and has, either by oneself or together with others, both the power and intent to control the disposition or use of that substance.

Possession of a substance or article may be either actual or constructive. A person has actual possession of a substance or article if the person has it on the person, is aware of its presence and, either alone or together with others, has both the power and intent to control its disposition or use.

A person has constructive possession of a substance or article if the person does not have it on the person but is aware of its presence and has, either alone or together with others, both the power and intent to control its disposition or use.

The jury returned verdicts finding Defendant guilty of Discharging a Weapon into Occupied Property, Possession of Firearm by Felon, First-Degree Burglary, Trafficking in Cocaine by Possession, PWISD Cocaine, and, subsequently, two separate counts of attaining Habitual-Felon status. The trial court orally announced

it sentenced Defendant as a habitual felon to 96 to 128 months active sentence for the charge of Discharging a Weapon into Occupied Property. The trial court orally rendered a consolidated judgment on the charges of First-Degree Burglary and Possession of a Firearm by a Felon and sentenced Defendant as a habitual felon to 96 to 128 months active sentence. The trial court also announced it would consolidate Defendant's convictions for PWISD Cocaine and Trafficking in Cocaine by Possession and entered judgment sentencing Defendant to 35 to 51 months with a mandatory fine of $50,000.00 for the Trafficking conviction without applying the enhancement for Habitual-Felon status. Defendant gave oral Notice of Appeal in open court.

The next day, on 13 February 2019, the trial court brought Defendant back before it, indicating it was "back to revisit sentencing" after it "made a mistake yesterday, in that the habitual felon also attaches to the drug trafficking." The trial court noted after Defendant left the courtroom the day before, the State pointed out the trial court failed to apply Habitual-Felon status to Defendant's Trafficking sentence. The trial court then sentenced Defendant as a habitual felon to 96 to 128 months active sentence for the conviction of Trafficking in Cocaine by Possession consolidated with the PWISD Cocaine conviction.

Written Judgments reflecting this corrected sentence dated 12 February 2019 were filed and entered on 13 February 2019. It appears on the Record after the corrected sentence was announced but before the written Judgments were entered on

13 February 2019, Defendant filed a written Notice of Appeal from the "verdicts and judgments entered against him on February 12, 2019." On 10 October 2019, out of an abundance of caution, Defendant filed a Petition for Writ of Certiorari with this Court for purposes of seeking review of the written Judgments entered on 13 February 2019. To the extent it is necessary to permit our appellate review of these Judgments, we grant Defendant's Petition and issue our Writ of Certiorari specifically to review the issues raised in Defendant's appeal.

## Issues

Defendant raises three issues on appeal: (I) whether the trial court erred when it deviated from the exact language of the North Carolina Pattern Jury Instruction for Misdemeanor Breaking and Entering; (II) whether the trial court erred when it instructed the jury on both theories of actual and constructive possession for Trafficking in Cocaine by Possession and PWISD Cocaine; and (III) whether the trial court had subject-matter jurisdiction to change Defendant's sentence for Trafficking in Cocaine by Possession after Defendant entered Notice of Appeal in open court.

## Analysis

### I. Misdemeanor Breaking and Entering

*A. Standard of Review*

Defendant was convicted of First-Degree Burglary. On appeal, Defendant contends the trial court erred related to this conviction when it deviated from the

North Carolina Pattern Jury Instruction on the lesser included offense of Misdemeanor Breaking and Entering by omitting the portion instructing the jury breaking and entering must be "wrongful, that is, without any claim of right." Defendant argues the trial court's instruction was an incorrect statement of the law because "wrongful does not only mean 'without consent[,]' wrongful means 'without claim of right.' "

Defendant contends this error is preserved without objection under *State v. Jaynes*. 353 N.C. 534, 549 S.E.2d 179 (2001). In *Jaynes*, "no explicit request was made that the instruction be given in conformance with the North Carolina Pattern Jury Instruction[.]" *Id.* at 556, 549 S.E.2d at 196. However, "during the charge conference all parties referred to the pattern instruction when discussing the submission" and the trial court further "drew the parties' attention to specific language in the pattern instruction[.]" *Id.* "Given the[ ] circumstances," our Supreme Court held the "defendant had no reason to make his own request that the pattern instruction . . . be given. Accordingly, when the instruction actually given by the trial court varied from the pattern language, defendant was not required to object in order to preserve this question for appellate review." *Id.* The State contends, in opposition, we should review Defendant's argument for plain error because Defendant failed to object to the language of the now-challenged instruction.

During the charge conference, the trial court discussed the relevant sections of the proposed jury instructions with counsel and specifically indicated it would instruct the jury on Misdemeanor Breaking and Entering as a lesser-included offense to First-Degree Burglary. However, it is not clear from the Record the trial court actually deviated from the jury instruction the parties were in fact discussing during the charge conference. Indeed, the transcript before us seems to indicate the parties were not specifically discussing and contemplating the verbatim pattern jury instruction but rather an instruction based on the pattern instruction drafted by the trial court for purposes of the conference.[2]

Although Defendant did not "explicit[ly] request . . . the instruction be given in conformance with the North Carolina Pattern Jury Instruction[,]" *id.*, it does appear there was some general discussion and references made to the pattern instructions. For purposes of our analysis, we assume the references to the pattern instructions in the present case are sufficiently analogous to *Jaynes* and conclude "defendant was not required to object in order to preserve this question for appellate review." *Id.* at 556, 549 S.E.2d at 198. Accordingly, "[t]his Court reviews issues relating to the

---

[2] At the start of the charge conference, the trial court expressly stated:

> What I left on your tables . . . is just a draft of the instructions. And one of the differences that you will see in the previous draft is I just rearranged some . . . . I put all the patterns about witnesses together. . . . But if we can just go page by page, then I'll hear from you about any objections, corrections, or what you want.

substance of the trial court's instructions using a *de novo* standard of review." *State v. Watlington*, 234 N.C. App. 580, 593, 759 S.E.2d 116, 125 (2014) (citation and quotation marks omitted).

*B. Jury Instruction*

The trial court instructed the jury on Misdemeanor Breaking and Entering as a lesser-included offense to the charge of First-Degree Burglary. "Any person who wrongfully breaks or enters any building is guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 14-54(b) (2019). "A breaking or entry is wrongful when it is without the consent of the owner or tenant or other claim of right." *State v. Young*, 195 N.C. App. 107, 112, 671 S.E.2d 372, 375 (2009); *see State v. Boone*, 297 N.C. 652, 658, 256 S.E.2d 683, 686 (1979) (stating the offense of misdemeanor breaking and entering, codified at N.C. Gen. Stat. § 14-54(b), "expressly requires that an entry must be wrongful, *i.e.*, without consent of the owner, in order to be punishable").

The North Carolina Pattern Jury Instruction 214.10 titled "First Degree Burglary Covering . . . Lesser Included Offenses" provides the following instruction on Misdemeanor Breaking and Entering:

> Non-felonious breaking or entering differs from felonious breaking or entering in that it need not be done with the intent to commit a felony so long as the breaking or entering was *wrongful, that is, without any claim of right.*

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant wrongfully [broke into and entered] another person's building without that person's

consent, it would be your duty to return a verdict of guilty of non-felonious breaking and entering.

N.C.P.I.-Crim.214.10 (2011) (emphasis added). At trial, the trial court instructed the jury:

> Breaking or entering differs from burglary, in that both a breaking and an entry are not necessary, either a breaking or an entry is enough; further, the building that was involved need not have been a dwelling house; the breaking or entry need not have been during the nighttime; and there need not have been the intent to commit a felony therein.

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date of October 29th, 2017, the defendant broke into or entered a building *without the consent of the owner or tenant*, it would be your duty to return a verdict of guilty of breaking or entering.

"It is well established in this jurisdiction that the trial court is not required to give a requested instruction in the exact language of the request." *State v. Green*, 305 N.C. 463, 476-77, 290 S.E.2d 625, 633 (1982). "When a defendant requests a special jury instruction that is correct in law and supported by the evidence, the court must give the instruction in *substance*." *State v. Godwin*, 369 N.C. 605, 613, 800 S.E.2d 47, 53 (2017) (emphasis added) (citation omitted).

Here, the evidence reflects after Defendant and Hamilton were in an altercation and after Defendant made the direct threat he was leaving to get his gun, Defendant broke into and entered Hamilton's apartment without consent after firing two gunshots through the front door. Defendant walked into the bedroom where

Watkins was resting and while Hamilton was hiding and asked her where Hamilton was. Defendant, brandishing his gun, told Watkins "if I kill him, I'm going to have to kill you because I can't leave a witness just like that." Despite the omission of the word "wrongful" or "without claim of right," the trial court's instruction on the lesser-included offense of Misdemeanor Breaking and Entering on the facts in this case was correct in law and was supported by the evidence Defendant broke into and/or entered the residence without consent. *See id.* Thus, the trial court's minor deviation from the pattern instruction on the lesser included offense in this case does not constitute error.

Moreover, even if the trial court's deviation from the pattern jury instruction did rise to the level of error, Defendant failed to establish any error in the omission from the instruction was prejudicial. First, Defendant does not articulate any basis in the evidence in this case under which his breaking and entering was either not wrongful or under a claim of right.

Moreover, the jury found Defendant guilty of First-Degree Burglary. Defendant did not object to—and does not challenge on appeal—the instruction on First-Degree Burglary, where the trial court charged: "The defendant has been charged with first degree burglary, which is breaking and entering in the nighttime of another person's occupied dwelling house *without that person's consent* and with the intent to commit assault with a deadly weapon with intent to kill." The trial court

- 13 -

included Misdemeanor Breaking and Entering as a lesser-included offense at Defendant's request and instructed the jury consistent with its instruction for First-Degree Burglary—that the breaking and entering be "without the consent of the owner or tenant." The trial court's instruction on Misdemeanor Breaking and Entering thus was consistent with the instruction on the First-Degree Burglary charge, predicated on intent to commit assault with a deadly weapon with intent to kill, and the omission of "wrongful, that is, without any claim of right" from the pattern instruction was not error and did not prejudice Defendant because the undisputed evidence reflected Defendant did not have consent to break into and/or enter Hamilton's apartment. Therefore, the evidence was more than sufficient for the jury to determine Defendant broke into or re-entered the apartment wrongfully and/or without consent.

## II. Actual and Constructive Possession of Cocaine

Defendant next contends the trial court erred when it instructed the jury on theories of both actual and constructive possession for the charges of Trafficking in Cocaine by Possession and PWISD Cocaine where the evidence did not support the instruction on actual possession. The State concedes the trial court's instruction on actual possession was not supported by the evidence; nevertheless, the State contends the error was not prejudicial.

> [A] defendant seeking to obtain appellate relief on the basis of an
> error to which he or she lodged an appropriate contemporaneous

objection at trial must establish that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."

*State v. Malachi*, 371 N.C. 719, 738, 821 S.E.2d 407, 421 (2018) (footnote omitted) (quoting N.C. Gen. Stat. § 15A-1443(a) (2017)). At trial, counsel for Defendant objected to the trial court's instruction on both actual and constructive possession; however, Defendant must still demonstrate the error resulted in prejudice. *See id.*

Possession is a necessary element of both the offenses of Trafficking in Cocaine by Possession and PWISD Cocaine. *See* N.C. Gen. Stat. §§ 90-95(h)(3), 90-95(a) (2019). "Possession of controlled substances may be either actual or constructive." *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 73 (1996). "Actual possession requires that a party have physical or personal custody of the item." *Malachi*, 371 N.C. at 730, 821 S.E.2d at 416 (citation and quotation marks omitted). Meanwhile, constructive possession arises when "[a] person . . . has the intent and capability to maintain control and dominion over that thing." *Id.* at 730-31, 821 S.E.2d at 416 (citation and quotation marks omitted). Defendant argues he was prejudiced by the inclusion of the actual possession instruction because it "unnecessarily suggested to the jury that the State presented some evidence at trial showing that [Defendant] had actual possession of a controlled substance[.]"

In contrast, the State argues Defendant was not prejudiced by this admittedly erroneous instruction because there was "exceedingly strong" evidence of Defendant's

guilt on the basis of constructive possession. *See id.* at 738, 821 S.E.2d at 421. Where "the State presents exceedingly strong evidence of defendant's guilt on the basis of a theory that has sufficient support and the State's evidence is neither in dispute nor subject to serious credibility-related questions, it is unlikely that a reasonable jury would elect to convict the defendant on the basis of an unsupported legal theory." *Id.*

In the present case, the State presented exceedingly strong evidence to support a conviction based on Defendant's constructive possession of the cocaine recovered from 1915 Freeman Mill Road. Hamilton informed Officer Nutter Defendant operated out of the residence at 1915 Freeman Mill Road and that he had purchased cocaine from him there "a couple of times." When officers with the Greensboro Police Department executed the warrant for Defendant's arrest on 1 November 2017, the officers responded to 1915 Freeman Mill Road—where they found Defendant. The two vehicles Hamilton reported Defendant drove were both parked at the residence at the time the search warrant was executed. Police tracking of Defendant's cell phone number indicated he was at the residence, and call logs retrieved for the thirty-day period prior to Defendant's arrest showed calls made from 1915 Freeman Mill Road. Defendant argues his driver's license does not show he resided at 1915 Freeman Mill Road and that the residence was owned by someone named Robert Maddux. Even if this may constitute some evidence Defendant did not reside at 1915 Freeman Mill Road, it does not "dispute nor subject to serious credibility-related

questions" the State's exceedingly strong evidence supporting the theory Defendant had constructive possession of the cocaine recovered from 1915 Freeman Mill Road. *Id.*

Accordingly, although the trial court's instruction on the theory of actual possession for Defendant's Trafficking in Cocaine by Possession and PWISD Cocaine charges was error, Defendant has not demonstrated "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a).

### III. Subject-Matter Jurisdiction to Correct Judgment

Finally, Defendant contends the trial court lacked subject-matter jurisdiction to change his sentence for Trafficking in Cocaine by Possession on 13 February 2019 after he gave Notice of Appeal in open court when his sentence was first pronounced. "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted).

On 12 February 2019, the trial court sentenced Defendant to 35 to 51 months active sentence with a mandatory fine of $50,000.00 after consolidating his convictions of Trafficking in Cocaine by Possession and PWISD Cocaine. The trial court did not factor in Defendant's Habitual-Felon status on the Trafficking conviction. The same day, Defendant gave Notice of Appeal in open court. The very

- 17 -

next day, after the State notified the trial court of the error, the trial court brought Defendant back before the court indicating "[it] made a mistake yesterday, in that the habitual felon also attaches to the drug trafficking." Having ensured Defendant was present for sentencing, the trial court corrected Defendant's sentenced on the cocaine charges and sentenced Defendant as a habitual felon to 96 to 128 months active sentence.

On appeal, Defendant correctly notes the general rule: a trial court is divested of jurisdiction immediately upon the proper giving of notice of appeal. *See State v. Briggs*, 257 N.C. App. 500, 502, 812 S.E.2d 174, 176 (2018) ("Even where a statute allows the trial court to act beyond the close of the original session, '[t]he jurisdiction of the trial court with regard to the case' will remain divested as of the filing of a notice of appeal." (alteration in original) (citations omitted)). However, our Court has recently recognized a more specific rule governs in this context. In *State v. Lebeau*, this Court recognized N.C. Gen. Stat. § 15A-1448 allows for a trial court to correct an error in sentencing a defendant within fourteen days of pronouncing its sentence notwithstanding the fact a defendant had already given notice of appeal and even without a statutorily authorized motion for appropriate relief. *See State v. Lebeau*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (COA19-872, filed 21 April 2020); *see also In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent

panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

Under N.C. Gen. Stat. § 15A-1448(a)(3), "[t]he jurisdiction of the trial court with regard to the case is divested, except as to actions authorized by [N.C. Gen. Stat. §] 15A-1453, when notice of appeal has been given and the period described in (1) and (2) has expired." N.C. Gen. Stat. § 15A-1448(a)(3) (2019). "Subsection (1) refers to 'the period provided in the rules of appellate procedure for giving notice of appeal.' " *Lebeau*, ___ N.C. App. at ___, ___ S.E.2d at ___, (Slip op. at 4) (quoting N.C Gen. Stat. § 15A-1448(a)(1) (2019)). The North Carolina Rules of Appellate Procedure allow a written notice of appeal in a criminal case to be filed 14 days after the entry of a judgment." *Id.* (citing N.C.R. App. P. 4(a)(2) (2019)). Subsection (2) addresses motions for appropriate relief made pursuant to Sections 15A-1414 and 15A-1416(a). N.C. Gen. Stat. § 15A-1448(a)(2). Therefore, under *Lebeau* where no motion for appropriate relief is made in accordance with Section 15A-1448(a)(2), "under the plain language of [Section] 15A-1448(a)(3), the trial court has jurisdiction until notice of appeal has been given *and* 14 days have passed." *Lebeau*, ___ N.C. App. at ___, ___ S.E.2d at ___, (Slip op. at 4) (emphasis added). This conclusion is supported by the Official Commentary to Section 15A-1448:

> This section permits the defendant to give his notice of appeal, and yet retains the case in the trial court for the full 10-day [now 14-day] period. This will insure a period during which matters

may, if possible, be corrected at the trial level, without problem
as to the timely notice of appeal.

N.C. Gen. Stat. § 15A-1448 cmt.

In *Lebeau*, the trial court originally announced only a minimum statutory term without including the statutory maximum. *See Lebeau*, ___ N.C. App. at ___, ___ S.E.2d at ___, (Slip op. at 2). Indeed, *Lebeau* recognized in a separate aspect of that appeal an amendment to a criminal sentence is not substantive if it is "a statutorily 'necessary byproduct' of the sentence." *Id.* at ___, ___ S.E.2d at ___, (Slip op. at 7) (citing *State v. Arrington* 215 N.C. App. 161, 167, 714 S.E.2d 777, 782 (2011)). Likewise, in the case *sub judice*, the trial court originally announced a sentence for Trafficking in Cocaine by Possession that did not factor in the statutorily required sentencing enhancement based on Defendant's Habitual-Felon status. However, once the jury returned its verdict finding Defendant attained Habitual-Felon status, the trial court was required to sentence Defendant as a habitual felon—a statutorily necessary by-product of the sentence. *See* N.C. Gen. Stat. § 14-7.6 (2019) ("When [a] habitual felon . . . commits any felony under the laws of the State of North Carolina, the felon *must* . . . be sentenced at a felony class level that is four classes higher than the principal felony for which the person was convicted[.]" (emphasis added)).

Thus, we conclude under this Court's holding in *Lebeau*, the trial court retained jurisdiction to correct Defendant's sentence despite Defendant's prior Notice of Appeal because the fourteen-day period for giving written notice of appeal had not

yet expired. In reaching this conclusion, we also hasten to note both this case and *Lebeau* involve an instance where a trial court was correcting an error in sentencing in order to comply with a statutorily mandated sentencing requirement. *See Briggs*, 257 N.C. App. at 502, 812 S.E.2d at 176 (recognizing following notice of appeal, "the trial court retains jurisdiction only over matters ancillary to the appeal," including correction of clerical errors not implicating judicial discretion or judicial reasoning).

## Conclusion

Accordingly, for the foregoing reasons, the trial court did not err in its jury instructions on the lesser-included offense of Misdemeanor Breaking and Entering. The trial court erred when it instructed the jury on the theories of both actual and constructive possession; however, the error was not prejudicial. We further conclude the trial court retained jurisdiction to correct Defendant's sentence for his convictions of Trafficking in Cocaine by Possession and PWISD Cocaine.

NO ERROR IN PART; NO PREJUDICIAL ERROR IN PART.

Judges DILLON and ZACHARY concur.