An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-716

Filed 6 August 2025

Davidson County, Nos. 21CRS052560-280, 21CRS052561-280, 21CRS052562-280, 22CRS000040-280

STATE OF NORTH CAROLINA

v.

KEYON JORDAN CANTY

Appeal by defendant from judgments entered 14 December 2023 by Judge Richard S. Gottlieb in Davidson County Superior Court. Heard in the Court of Appeals 9 April 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Danielle Wilburn Allen, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for defendant.*

FREEMAN, Judge.

Defendant appeals from judgments entered upon jury verdicts of guilty on the charges of possession of a firearm by a felon, first-degree burglary, conspiracy to commit robbery with a dangerous weapon, discharging a firearm within an enclosure to incite fear, three counts of first-degree kidnapping, and attempted robbery with a

dangerous weapon. On appeal, defendant argues: (1) the trial court erred in denying his motion to dismiss the charge of discharging a firearm within an enclosure to incite fear; (2) this State's statute prohibiting possession of a firearm by a felon is facially unconstitutional; and (3) the jury was erroneously instructed on the theory of acting in concert on the charge of possession of a firearm by a felon. After careful review, we conclude that defendant received a fair trial free of prejudicial error.

## I.    Factual and Procedural Background

On the evening of 10 June 2021, Michael Hepler and his wife, Charity Cox, were preparing to go to bed in their home. The couple shared their home with each of their elderly fathers. The couple's bedtime routine was interrupted by "a loud bang . . . like a shotgun" and "a lot of commotion" at the front door of the house. Hepler jumped out of bed, ran to investigate, and was greeted with a gun "like an assault rifle, but not as long as an assault rifle," pointed at his face. Hepler saw his father-in-law laying on the ground and his father sitting on the couch and realized that two unknown men had invaded his home.

Both of the unknown men were yelling at the family to hand over money, and the man holding the gun was "waving it around straight at everybody." The men confiscated the family's cell phones and then led Hepler, his father, and his father-in-law to a bedroom. The man holding the gun stayed in the bedroom with the home's occupants while the other man "ran through the whole house, flipping mattresses . . . slamming drawers, everything." After about eight minutes, the other

man returned and demanded that Hepler's father tell him where the money was. Hepler's father told the man there was some money in a Pringles can and the man punched Hepler's father in the head. The man then moved the home's occupants to the hallway and ransacked the bedroom while the man with the gun "kept it pointing at [the occupants] the whole time."

Eventually, the men led Hepler, his father, and his father-in-law to a small storage closet. The men tried to restrain Hepler with a curtain but were interrupted by the doorbell ringing at the home's front door, at which point they fled the home. Ms. Cox, who had locked herself in the bedroom after hearing the gunshot and initial commotion, had called 911. The Davidson County Sheriff's Office responded to the call.

After law enforcement cleared the home, Hepler discovered a gunshot at the bottom of the front door that "went through the door and the wall." According to a detective who responded to the scene, there was a "bullet hole where the round had traveled through the door at the bottom and went into the wall" and "there was also a shell casing laying behind the door." Later at trial, the State introduced photographs showing a bullet hole in the front door, another bullet hole in the perpendicular left-hand side interior wall of the home, and a shell casing inside the home's internal entry way. Law enforcement recovered an AR-15 style rifle and a 30-round magazine from the home.

Tim Smith of the Davidson County Sheriff's Office responded to the scene of

the home invasion. As he arrived on the scene, he saw his colleague Tony Gordon pulling into a driveway. He also observed another vehicle, a white Nissan driven by a man matching defendant's description, positioned between himself and Gordon. Officer Smith turned on his patrol lights and attempted to block the vehicle from leaving the scene, but the Nissan drove into a nearby ditch and fled. After following the Nissan's tracks, Officer Smith discovered the vehicle disabled and abandoned in the ditch.

Around the same time, Zachary Walker, a crime scene technician with Davidson's County Sheriff's Office, was conducting an unrelated welfare check nearby. Officer Walker noticed defendant walking down the road and, because defendant matched the description of the man driving the Nissan, stopped him and performed a consensual pat-down search. During the search, Officer Walker retrieved a Nissan key fob from defendant's pocket. This key fob belonged to the Nissan that had fled from Officer Smith earlier that evening.

After defendant was taken into custody, he was interviewed by Special Agent Shaun Hunter of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. During this interview, defendant stated that one of the other suspects, Kearns, told defendant he had "felt the urge to rob someone" and "suggested robbing a specific individual that was flashing money."

According to defendant, he and Kearns picked up the third suspect, White, and drove to the victims' home. After defendant saw that the home's door was open, he

and the other two men left the residence and picked up a firearm. The three men returned to the home with the firearm and defendant waited in the Nissan while Mr. White and Mr. Kearns entered the residence. Defendant got nervous when he "heard the blast of a firearm go off" shortly after the other two men entered the home and he drove away when he noticed Officer Gordon and Officer Smith responding to the scene. Defendant ultimately crashed his vehicle and fled into the woods before encountering Officer Walker and being taken into custody.

On 10 January 2022, a grand jury indicted defendant for: (1) one count of possession of a firearm by a felon; (2) one count of first-degree burglary; (3) one count of conspiracy to commit robbery with a dangerous weapon; (4) one count of discharging a firearm within an enclosure to incite fear; (5) three counts of first-degree kidnapping; and (6) one count of attempted robbery with a dangerous weapon. Defendant's matter came on for trial on 11 December 2023, and the jury found defendant guilty on all counts.

The trial court sentenced defendant to: (1) 12–24 months imprisonment for the possession of a firearm by a felon conviction; (2) 73–100 months imprisonment for the first-degree burglary conviction; (3) 29–47 months imprisonment for the conspiracy to commit robbery with a dangerous weapon conviction; (4) 19–32 months imprisonment for the discharging a firearm within an enclosure to incite fear conviction; and (5) 83–112 months imprisonment for the three consolidated first-degree kidnapping convictions and the consolidated attempted robbery with a

dangerous weapon conviction. The trial court ordered these five sentences to run consecutively. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction to review an appeal from "any final judgment of a superior court, other than one based on a plea of guilty or nolo contendere[.]" N.C.G.S. § 7A-27(b)(1) (2023). As defendant's judgments from Davidson County Superior Court are not based on a plea of guilty or nolo contendere, we have jurisdiction to review defendant's appeal.

## III.    Standard of Review

This Court reviews the denial of a motion to dismiss de novo. *State v. Golder*, 374 N.C. 238, 250 (2020). Similarly, we review de novo whether a statute is facially unconstitutional, *State v. Grady*, 372 N.C. 509, 521 (2019), and whether a jury instruction correctly explains the law, *State v. Greenfield*, 375 N.C. 434, 440 (2020).

## IV.    Discussion

On appeal, defendant argues: (1) the trial court erred in denying his motion to dismiss the charge of discharging a firearm within an enclosure to incite fear; (2) this State's statute prohibiting possession of a firearm by a felon is facially unconstitutional; and (3) the jury was erroneously instructed on the theory of acting in concert on the charge of possession of a firearm by a felon. We address each argument in turn.

**A. Motion to Dismiss**

Defendant first argues the trial court erred in denying his motion to dismiss the charge of discharging a firearm within an enclosure to incite fear because the State "failed to present substantial evidence that a firearm was discharged *within* the house[.]" Specifically, defendant contends that a "bullet fired *through* the front door of a residence that ends up *inside* an interior wall cannot have been fired from within the residence."[1]

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Golder*, 374 N.C. 238, 249 (2020) (cleaned up). "Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion." *Id.* (cleaned up). "In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *Id.* at 249–50 (cleaned up). An individual commits the crime of discharging a firearm within an enclosure to incite fear when he or she "willfully or wantonly discharges or attempts to discharge a firearm within any occupied building, . . . with the intent to incite fear in another[.]"

---

[1] The State argues that since defendant's trial counsel stated "[w]e know there was a shot fired inside of the residence" at trial, we should decline to review defendant's contradictory argument on appeal. This argument is foreclosed by our Supreme Court's decision in *State v. Golder*, in which that Court held regardless of the theory argued at trial, "merely moving to dismiss at the proper time under Rule 10(a)(3) preserves *all* issues related to the sufficiency of evidence for appellate review." 374 N.C. 238, 249 (2020). Accordingly, we are constrained to address the merits of defendant's argument on appeal.

N.C.G.S. § 14-34.10 (2023).

Here, defendant contends that the State failed to produce substantial evidence that a firearm was discharged within the home because "[a] bullet fired *through* the front door of a residence that ends up *inside* an interior wall cannot have been fired from within the residence." This argument is without merit. The State introduced photographic exhibits depicting damage to the front door and interior wall of the home, and these exhibits clearly show: (1) a bullet hole in the wall perpendicular to the entrance of the home, and (2) a shell casing located inside the home. These exhibits and the testimony at trial provided substantial evidence that the firearm was discharged inside the home's entryway, with the bullet travelling straight through the *open* front door and into the wall directly behind the open door. Considering this evidence in the light most favorable to the State, the trial court did not err in denying defendant's motion to dismiss the charge of discharging a firearm within an enclosure to incite fear.

## B. Possession of a Firearm by a Felon

Defendant next argues that the statute prohibiting possession of a firearm by a felon is facially unconstitutional under the constitutions of the United States and North Carolina. However, because defendant failed to advance this argument at trial, he asks this Court to invoke Rule 2 of the Rules of Appellate Procedure and waive Rule 10's preservation requirements. Rule 2 provides that this Court may "suspend or vary the requirements or provisions of any of these rules" to "prevent

manifest injustice to a party, or to expedite decision in the public interest[.]" N.C. R. App. P. 2. As this Court has already rejected an argument regarding this statute's constitutionality, *see State v. Nanes*, 912 S.E.2d 202 (N.C. Ct. App. 2025), and as defendant has failed to show that suspension of Rule 10 is necessary to prevent manifest injustice, we decline to invoke Rule 2 and therefore dismiss defendant's unpreserved argument.

## C. Jury Instructions

Finally, defendant argues the trial court prejudicially erred by instructing the jury on the theory of acting in concert for the charge of possession of a firearm by a felon.[2] Despite this contention, defendant acknowledges that: (1) neither this Court nor our Supreme Court have determined such an instruction is inappropriate for this charge, *see State v. Collington*, 375 N.C. 401, 412 (2020); (2) he is a convicted felon who retrieved and transported a firearm to the victims' home; and (3) he could have been convicted of this charge even if the trial court did not include the acting in concert instruction, so long as "the jury believed he was a felon and in fact possessed a firearm."

As our Courts have not yet determined whether the theory of acting in concert is appropriate for the charge of possession of a firearm by a felon, we presume,

---

[2] The State contends defendant failed to preserve this issue for appellate review and this Court should therefore review only for plain error. However, our review of the transcript satisfies us that defendant properly objected to this instruction and thereby preserved this issue for our review.

without deciding, that such instruction was error and "evaluate the prejudicial effect of the delivery of this instruction using our traditional harmless error standard[.]" *State v. Steen*, 376 N.C. 469, 487 (2020). Under this standard, defendant is required to demonstrate a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2023). "In conducting the required prejudice analysis, a reviewing court should not find the error harmless if it is unable to conclude that the jury verdict would have been the same absent the error." *Steen*, 376 N.C. at 487 (cleaned up).

> However, in the event that the State presents exceedingly strong evidence of defendant's guilt on the basis of a theory that has sufficient support and the State's evidence is neither in dispute nor subject to serious credibility-related questions, it is unlikely that a reasonable jury would elect to convict the defendant on the basis of an unsupported legal theory.

*State v. Malachi*, 371 N.C. 719, 738 (2018).

Here, the trial court instructed the jury on the charge of possession of a firearm by a felon, in relevant part, as follows:

> If you find from the evidence beyond a reasonable doubt that the defendant was convicted of the felony of attempted trafficking opium or heroin by possession that was committed on April 18, 2018, in violation of the laws of the State of North Carolina, and that the defendant, after August 9, 2018, had within the defendant's custody, care and control a firearm, either actually or constructively, while acting in concert with others, it would be your duty to return a verdict of guilty.

The undisputed evidence at trial established that defendant was a convicted felon and that he, Mr. Kearns, and Mr. White, retrieved a firearm and transported it to the victims' home within the Nissan defendant was driving. This evidence readily establishes, at minimum, defendant's constructive possession of the firearm, and the State therefore presented "exceedingly strong evidence of defendant's guilt on the basis of a theory that has sufficient support," *Malachi*, 371 N.C. at 738. As defendant cannot demonstrate a reasonable possibility of a different result absent the trial court's alleged error, the trial court did not prejudicially err in its instruction on the possession of a firearm by a felon charge.

## V. Conclusion

The trial court did not err in denying defendant's motion to dismiss the charge of discharging a firearm within an enclosure to incite fear because the State introduced substantial evidence that the firearm was discharged within the victims' home. We decline to address defendant's unpreserved facial constitutional challenge to the statute prohibiting possession of a firearm by a convicted felon. We conclude that any presumed error in the trial court's instruction on possession of a firearm by a convicted felon was harmless. Defendant received a fair trial, free of prejudicial error.

NO ERROR IN PART; NO PREJUDICIAL ERROR IN PART.

Judges ARROWOOD and WOOD concur in result only.

Report per Rule 30(e).